# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts

---

### Bybee *v.* Hawkett and others.

*(Circuit Court, D. Oregon.* December 13, 1880.)

1. REMOVAL OF CAUSE.—Under the second clause of section 2 of the act of March 3, 1875, any suit mentioned therein is removable whenever it involves a controversy wholly between citizens of different states, and which can be fully determined as between them, upon the petition of either one or more of the plaintiffs or defendants actually interested in such controversy; and it is immaterial whether such controversy is considered the main or principal one in the suit or not, or what other controversies or parties are incidentally or otherwise involved in it.

In Equity.

*Addison C. Gibbs* and *B. F. Dowell*, for plaintiff.

*E. C. Bronnaugh*, for non-resident defendants.

DEADY, D. J. This suit was commenced on June 18, 1879, in the circuit court of the state for the county of Jackson, against the defendant Hawkett and nine others, and after a weary waste of wordy, confused, and iterated contention, covering 327 pages of closely-written legal cap, consisting, among other things, of the complaint, the supplemental and

v.5,no.1—1

first and second amended complaints, motions to strike out, demurrers, answers, and replications, it was brought to an issue, with two additional defendants, on March 31, 1880.

On June 8, 1880, two of the defendants, Jesse Robinson and E. C. Robinson, filed their petition and bond for the removal of the suit to this court under section 2 of the act of March 3, 1875, (18 St. 470,) alleging therein that the plaintiff is a citizen of Oregon, and that the defendant Hawkett and the petitioners are citizens of California, and "that there is a controversy in this suit which is wholly between the said plaintiff and the said defendants," Hawkett and the petitioners, "which controversy can be fully determined as between them;" and finally determined without the presence of the other defendants or any of them as parties in the cause.

On September 3, 1880, the petitioners filed a copy of the record of the suit in this court; and on November 9th the plaintiff moved to remand the cause to the state court. The motion to remand is based upon the following grounds: *First,* the application to remove was not made in time; *second,* "all the defendants are not of another state"—meaning, I suppose, that they are not citizens of another state than the plaintiff; *third,* all the defendants did not join in the application; and, *fourth,* "the controversy involved in said suit cannot be fully determined between the parties thereto without the presence of McGruder and Haymond, two of said defendants."

The facts and allegations of the case to be considered in disposing of this motion are: That on July 26, 1878, the plaintiff, being the legal owner of certain mining property known as "The Taylor Claims," situate in Josephine county, Oregon, and described as lot 5, in section 35, S. of R. 7 W., and two certain water-rights and ditches approximate thereto, sold the undivided two-thirds thereof to the defendants Hawket and E. C. Robinson, by a written agreement of that date, wherein and by it was agreed between the parties thereto (1) "to mine and operate said mining property as a company;" (2) that the said defendants would "pay and assume the fol-

lowing debts, to-wit: to James Neely, administrator of Evan Taylor's estate, $2,784.56; Kasper Kubli, $882.68; Dan Green, $500; William Smith, $500; and pay to the plaintiff $1,432,—in all, $6,099.24; "said amounts to be paid down, or on such time as may be agreed upon by the said defendants and the persons to whom said debts are due;" (3) that said defendants would put upon the property, at their own expense, "such improvements and additional machinery as may be necessary;" but such expense and "the amounts" aforesaid were "to be repaid" to said defendants "out of the profits taken out of said mines" before any "dividends" were paid to the members of the company, but thereafter the said profits were "to be equally divided between the three members of said company;" and (4) that said property, together with the improvements thereon and thereafter put on, "are to be held as a lien and security for the payment of the debts above specified."

On the day of this agreement said Hawkett & Robinson paid $3,716.56 upon said debts, to-wit: the debt to Neely in full, $500 to Kubli, and $432 to the plaintiff, and gave their notes for the remainder—the one to Kubli being also signed by the plaintiff. The debts of Green and Smith remain unpaid—the latter not having become due until March, 1880, and the former having been taken up by the plaintiff. Judgment has been obtained against the makers upon the note to Kubli, and an action is pending upon the one given to the plaintiff, in which the property in question was attached on June 2, 1879. It is also alleged by the plaintiff that one William Irwin was the equitable owner of an individed third of said property, and that Hawkett & Robinson, in consideration of the sale to them of said interest, agreed to pay to and for said Irwin the sum of $2,500, in pursuance of which they paid to two persons $1,000 in cash, and gave their promissory note to the wife of said Irwin for $3,128.33, which is still unpaid, and now held by the defendants Gazley and Fink; and also their note signed by the plaintiff to the defendants Kubli and Bolt for $85.43, which the plaintiff has since paid, and promised to pay the plaintiff $86.24, then

due from said Irwin to him, which promise they have not kept. In the action pending against Hawkett and Robinson, aforesaid, the plaintiff has included the last two items, amounting to $171.67. The plaintiff claims that $3,882.68 of the indebtedness which Hawkett and Robinson assumed remains unpaid, and that there is a lien upon the property in favor of the person to whom it is now due.

On March 17, 1879, Hawkett sold his interest in the premises to Robinson; and the latter, in his answer, denies that Irwin had any interest in the mine, or sold or delivered any to himself or Hawkett, and alleges that the several promissory notes given on account of the debts assumed by himself and Hawkett were given and received as payments thereof, and that the original debts were thereby extinguished, and the liens, if any, discharged; that the debt of Green was not paid because he refused and still refuses to relinquish a claim to one of the water rights in question, as he was bound to do.

The plaintiff also alleges that the defendant Jesse Robinson, the father of E. C. Robinson, was a secret partner in this transaction with Hawkett and his son, but this allegation is denied by the answer of each of the Robinsons. On May 13, 1879, E. C. Robinson mortgaged an undivided two-thirds of the property to the defendants Benjamin Haymond and C. Magruder, to secure the payment of his note to them for $2,295; and on May 14, 1879, mortgaged the same interest to Jesse Robinson to secure the payment of his note to him for $4,975.

The plaintiff alleges that the $3,882.68—the unpaid portion of the indebtedness aforesaid—is a lien upon the property prior to the lien of said mortgages, both on account of the terms of the contract of sale of July 26, 1878, and as a "vendor's lien for the purchase money;" and that the alleged mortgage to Jesse Robinson is fraudulent and void as against said liens, for want of consideration, and was made to cheat and defraud the plaintiff out of his just claims against the defendants Hawkett and Robinson; and that each of said mortgagees, at and before the taking of such mortgages, had actual notice of the agreement of July 26, 1878, and that each of

the debts aforesaid "were due for the purchase money for said property." The answer of each of the Robinsons, and that of Haymond and Magruder, denies the allegations of the complaint in this respect, and asserts the integrity and validity of the mortgage to Robinson.

The plaintiff also alleges that the defendants Hawkett & Robinson have taken out of the mine $3,000 worth of gold dust which they have failed to account for; but this is denied by the answer of Robinson.

The defendant Hawkett has not answered. He and E. C. and Jesse Robinson are citizens of California. The plaintiff and the rest of the defendants, namely, Irwin, Smith, Kubli, Gazley, Fink, Haymond, and Magruder, are citizens of Oregon.

A receiver was asked for and appointed by the state court, and the property is still in his possession. An injunction was also allowed against the Robinsons.

The complaint asks that an account be taken of the products and expense of the mine since August 21, 1878; that the priority of the liens be determined; that said contract be enforced; that Hawkett and the Robinsons be required to pay the debts aforesaid and the costs of this suit, and that in default thereof their interest in the property be sold and the proceeds applied to pay the same according to their priority.

On the argument of the motion the objection that the petition for removal was not filed in time was abandoned. The other grounds of the motion are, in effect, that all the defendants are not citizens of California, and did not join in the petition for removal; and that the controversy in the suit cannot be determined without the presence of the defendants Magruder and Haymond.

This removal, if sustained, must rest upon section 2 of the act of March 3, 1875, (18 St. 470,) which reads: "That any suit of a civil nature, at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their

authority, or in which the United States shall be plaintiff or petitioner, or in which there shall be a controversy between citizens of different states, or a controversy between citizens of the same state, claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens or subjects, either party may remove said suit into the circuit court of the United States for the proper district; and when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district."

In *Removal Cases*, 100 U. S. 468, it was held by the supreme court that under the first clause of this section, where a controversy involved in the suit "is between citizens of one or more states on one side, and citizens of other states on the other side, either party to the controversy may remove the suit to the circuit court, without regard to the position they occupy in the pleadings as plaintiffs or defendants. For the purposes of a removal the matter in dispute may be ascertained, and the parties to the suit arranged on opposite sides of that dispute. If in such arrangement it appears that those on one side are all citizens of different states from those on the other, the suit may be removed. Under the old law the pleadings only were looked at, and the rights of the parties in respect to the removal were determined solely according to the position they occupied as plaintiffs or defendants in the suit. *Coal Co.* v. *Blatchford*, 11 Wall. 174. Under the new law the mere form of the pleading may be put aside, and the parties placed on different sides of the matter in dispute according to the facts. This being done, when all those on one side desire a removal it may be had, if the necessary citizenship exists."

The opinion was announced by the chief justice, and while the court was unanimous in its judgment concerning the cases under consideration, Mr. Justice Bradley, Strong, and

Swayne dissented from so much of the opinion as seemed to assume that under the first clause of section 2 of said act of 1875 a removal could not be had unless each party to the controversy is "a citizen of a different state from that of which either of the parties on the other side is a citizen," and held that a "controversy," within the meaning of the constitution and the act, may exist between citizens of different states and also of the same state; but that notwithstanding, when any of the parties to such controversy are citizens of a different state from any other of such parties,—when "any of the contestants on opposite sides of the concontroversy are citizens of different states,"—a removal may be had by such party.

In *Gaines* v. *Fuentes*, 92 U. S. 20, Mr. Justice Field said: "A controversy was involved in the sense of the statute [March 2, 1867; 14 St. 558] whenever any property or claim of the parties, capable of pecuniary estimation, was the subject of litigation, and was presented by the pleadings for judicial determination." In this case there is a controversy (1) between Bybee and Jesse Robinson as to whether the latter was a member of the firm of Hawkett & Robinson, and is therefore liable to him accordingly; (2) between the same parties as to the validity and effect of Robinson's alleged mortgage; (3) between Bybee and Hawkett and the Robinsons — one or both of them, as the case may be — concerning the alleged liens of the debts assumed and alleged to have been assumed by Hawkett & Robinson; and (4) between the same parties concerning the working and disposition of the products of the mine.

These controversies are all between citizens of different states, and the parties to them also stand in the pleadings as plaintiffs and defendants in the suit—Bybee, a citizen of Oregon, on the one side, and Hawkett and the Robinsons, citizens of California, on the other. It matters not what other controversies or parties there are in or to the suit. Under even the first clause of the section, and according to the restrained construction put upon it by the majority of the court in the *Removal Cases, supra,* the existence of these

controversies in the suit authorizes its removal upon the application of either of the parties thereto; that is, all of the parties on either side of them.

But Hawkett did not apply for the removal, and although he has now no interest in the subject-matter of the suit, and might, therefore, be regarded as a mere nominal party, still, as it is claimed that he is personally liable to the plaintiff in this suit, upon his alleged promise to pay the debts assumed by Hawkett & Robinson at the time they purchased the property, it will be assumed that the cause was not removable under the first clause of the section.

The second clause of the section has not been passed upon by the supreme court, but in *Taylor* v. *Rockefeller*, 18 Law Reg. 301, Mr. Justice Strong expresses the opinion that under this clause, whenever, in a suit mentioned in the section, there is a controversy, even if it is not the main controversy therein, which is wholly between citizens of different states, and which can be fully determined as between them, then any one of the plaintiffs or defendants actually interested in such controversy may remove the suit into the circuit court. He says: "The right of removal is given where any one of those controversies is wholly between citizens of different states, and can be fully determined as between them, though there may be other defendants actually interested in other controversies embraced in the suit. The clause, 'a controversy which can be fully determined as between them,' read in connection with the other words, 'actually interested in such controversy,' implies that there may be other parties to the suit, and even necessary parties, who are not entitled to remove it. * * * Indeed, according to the literal reading of the statute, (a reading quite in harmony with the constitution,) the right of removal and the jurisdiction of this court exist, though the controversy between the plaintiffs and defendants, who are the petitioners for the removal, be not the main controversy in the case. * * * And there is no necessary embarrassment attending such removal. The entire suit is removed because of the controversy it involves between citizens of different states, and the circuit court, having

thus obtained jurisdiction, is competent to determine all the controversies involved between the plaintiffs and the other defendants. The other questions are regarded as incidental."

It is difficult to conceive of any other effect being given to this clause. Its language is so clear and explicit there is no room for construction. It must be taken to mean what it says, and say what it means. There is no suggestion of any particular kind or degree of controversy as a main or principal one, or a minor or incidental one; so that the controversy is wholly between citizens of different states, and one which can be fully determined as between them. The right of removal exists in favor of any plaintiff or defendant in the suit actually interested in such controversy. All the controversies which I have mentioned as existing in this case come within this category. They are wholly between citizens of different states, and can be fully determined as between them, and the petitioners for the removal are actually interested in them.

The grant of judicial power to the United States expressly includes all such controversies, (Const. U. S. art. 4, § 2,) and its courts are not precluded from its exercise because other parties and controversies are or may be incidentally or otherwise involved in the suit for the determination thereof, or in which they exist.

In a case lately decided in the supreme court—*The New Orleans M. & T. Ry. Co.* v. *The State of Mississippi*—where it was held that a case arising under an act of congress was removable under section 2 of the act of 1875, Mr. Justice Harlan, in speaking for the court, says "that it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is within the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it."

But, even upon the theory that the controversy which

authorizes the removal and gives jurisdiction to the circuit court, must, in some way or sense, be the main or principal one, this is a plain case for removal. For instance, if there is any principal controversy in this case, it is as to whether the debts alleged to be due the plaintiff and sundry of the defendants, citizens of Oregon, are secured by a vendor's and other lien upon this property, and upon one side of which are the defendants Hawkett and the Robinsons, citizens of California, and on the other the plaintiff, and the rest of the defendants except Haymond and Magruder; and as to them, if the liens are found not to exist, the controversy is fully determined without affecting them, while if the conclusion is otherwise, they are only incidentally interested in the controvery by reason of their interest in the surplus, if any, after the satisfaction of said debts and the discharge of the liens. They are not actually parties to this controversy, however they may be interested in the result of it. *Donohoe* v. *Mariposa Land Co.* 5 Saw. 166; *Osgood* v. *Chicago, D. & V. Ry. Co.* 6 Biss. 336.

Again, the controversy as to whether Jesse Robinson is a member of the firm of Hawkett & Robinson, or H. & R. Bybee, is a distinct and substantial controversy existing wholly between the plaintiff and himself, or the plaintiff and the defendants, who are citizens of Oregon, and alleged to have claims against said firm growing out of the sale of the mining property, and said Robinson; and in either case it is a controversy wholly between citizens of different states, and can be fully determined as between them. The same may be said of the controversy concerning the validity and priority of Jesse Robinson's mortgage; and upon either of these grounds he is clearly entitled to have this suit removed to this court without any other party joining in the application.

Besides, although it is not in so many words so alleged, practically this suit is brought for an accounting between the members of the alleged firm of Bybee, Hawkett, and the Robinsons, and for a dissolution of the same, and a sale and distribution of its effects. This is another distinct and substantive controversy in the case, and arises wholly between

the plaintiff, a citizen of Oregon, and Hawkett and the Robinsons, citizens of California, and does not even concern the other defendants.

The motion to remand is denied.