## GEORGE PACE

### v.

### ELIAS M. BARTLES.

1. In determining whether an absolute conveyance of land, together with a contract to reconvey upon payment of a fixed sum on a future day, constitutes a mortgage or not, the court will look at all the circumstances, the most important of which are: (1) Is there an obligation on the part of the grantor to pay the purchase-money which is enforceable at law? (2) Is the land conveyed worth considerably more than the purchase price? (3) Does the grantor retain possession of the land granted upon terms of paying a rent equal to the interest on the purchase price?

2. A person having an equity of redemption in land, arising out of an abso- lute conveyance and a separate contract to reconvey, may estop himself from setting up his equity by standing by and seeing the grantee make valuable improvements on the land, on the supposition that he is the absolute owner, and by enforcing against him pecuniary demands based upon such ownership..

On final hearing on bill, answer and proofs.

*Mr. Paul A. Queen* and *Mr. Martin Wyckoff*, for the com-- plainant.

*Mr. John N. Voorhees*, for the defendant.

PITNEY, V. C.

·This is a bill to redeem, and to that end seeks to have three· several deeds of conveyance of land declared to be mortgages. The land in dispute is a farm of one hundred and sixty-nine and twenty-one hundredths acres, of which about forty acres lie in Morris county, and the remainder, including the improvements, in Hunterdon county. The conveyances, which are alleged to·

have been made by way of mortgage, are as follows: First, a deed made by Pierson A. Freeman, sheriff of Morris county, to the defendant, Elias M. Bartles, dated June 17th, 1877, acknowledged June 23d, 1877, in consideration of $700. Second, a deed made by the complainant and his wife to the defendant, dated June 30th, 1877, executed and acknowledged July 5th, 1877, for the whole farm, for the consideration of $2,000. Third, a deed made by Wesley Bellis, sheriff of Hunterdon county, to the defendant, dated July 16th, 1877, in consideration of $2,001. The complainant rests his right to have these conveyances declared to be a mortgage and he permitted to redeem the premises, on two grounds—*first*, a verbal agreement made by the defendant contemporaneous with the several conveyances; and, *second,* a written agreement, dated and executed on July 9th, 1877, executed by the defendant and the complainant, by which the defendant gave the complainant the right to redeem the property, at any time within six months, for a sum of money therein named. The bill charges that the redemption agreement, taken in connection with the several conveyances, has the effect of making the transaction, in equity, a mortgage. It further charges that the complainant was addicted to drink, and because of that and a general incapacity for business, was unable to properly manage his affairs, and being in embarrassed circumstances, the defendant took advantage of the situation, under the guise of friendship, to obtain and retain the title to all his property.

The deed from Pace and wife to Bartles, dated June 30th, 1877, contains, after the covenants against encumbrances, the following clause:

"Save and except a judgment in the supreme court of New Jersey held by him, the said Bartles, which he is to make out of said property by sale thereon under and by virtue of the said judgment, the object and intent of this deed being for the conveyance of the said lands, that when sold the surplus shall go to said Bartles."

The redemption agreement of July 9th, 1877, is as follows:

"This agreement, made this ninth day of July, in the year of our Lord one thousand eight hundred and seventy-seven, between Elias M. Bartles, of the township of Washington, county of Morris, and State of New Jersey, of the

Pace v. Bartles.

:first part, and George Pace, of the township of Tewksbury, in the county of Hunterdon, and State of New Jersey, witnesseth, that whereas, by the last will :and testament of Michael Pace, deceased, the said Michael Pace, deceased, did give, devise and bequeath to said party of second part a certain farm, whereon .the said Michael Pace resided at the time of his decease, situate in the counties of Hunterdon and Morris, State of New Jersey, and whereas the said party ·of the first part did seize and levy upon the same by virtue of an execution .and executions in his favor on a judgment recovered in the supreme court of New Jersey against said Michael Pace and George Pace, and did advertise ·the same for sale, to be sold by the sheriffs of Morris and Hunterdon counties, and the said Pace, party of the second part, being unable to pay off and satisfy ·said judgment, interest and costs, the said parties to this agreement did make .and enter into a verbal agreement, as follows: That the said Elias M. Bartles should buy said farm at said sale; that the said Pace should execute, together with his wife, to said Bartles, a warranty deed for said premises, and then the said George Pace should have the privilege to redeem the same at any time ·within six months from and after the date of the sheriff's sale of the county ·of Hunterdon, upon the said George Pace paying to said Elias M. Bartles the sum of twenty-nine hundred and sixty-one dollars, and the further sum of two hundred and fifty dollars for the expenses and trouble of said Bartles in and about the purchase of the same:·

"Now this indenture witnesseth, that whereas, in pursuance of the above-stated agreement, the said George Pace, together with his wife, did, on the thirteenth day of June, A. D. eighteen hundred and seventy-seven, sell and ·convey by deed, under their hands and seals, all said farm to said Bartles, and ·the said Elias M. Bartles did purchase at the sale of said sheriff of the county ·of Morris,· and at the sale of said sheriff of the county of Hunterdon, said farm so bequeathed to said Pace as aforesaid, and also so conveyed to said Bartles as aforesaid by said Pace and wife. Now if the said George Pace shall ·at any time within six months pay to the said Elias M. Bartles the sum of thirty-two hundred and eleven dollars, or offer so to do, then the said Elias M. Bartles hereby covenants and agrees for himself, his heirs, executors, admin-.istrators and assigns, to and with the said George Pace, his heirs, executors, .administrators and assigns, that he will execute, or cause to be executed, to the said George Pace, his heirs, executors, administrators or assigns, a good and valid conveyance in the law for said premises, and deliver the same to said Pace upon his paying to said Bartles the aforesaid sum of thirty-two 'hundred and eleven dollars, with interest thereon from the date hereof, and ·for the full performance of this agreement the said parties hereto do bind themselves, their heirs, executors, administrators and assigns, each to the ·other, in the sum of five thousand dollars, to be considered as liquidated · damages for the full performance of this agreement.

· "Witness our hands and seals this ninth day of July, A. D. eighteen hundred :and seventy-seven.

"ELIAS M. BARTLES.  [L. S.]
"GEORGE PACE.  [L. S.]

·"Witness present: W. D. ALLEN.

Pace v. Bartles.

"And it is further agreed between the parties to this agreement that, by way of rent for said premises during the next six months, the said George Pace shall deliver to said Bartles one-third of the corn, oats and buckwheat now growing on said farm at such mill in German Valley as said Bartles shall direct; and in case said Pace shall redeem said property, as specified in said agreement, of which this is intended to be a part, then the said Bartles is to deduct from the amount specified in this agreement for said Pace to pay for said farm the amount he shall realize from the sale of said corn, oats and buckwheat so delivered to him by said Pace.

"Dated July 9, 1877.

> "ELIAS M. BARTLES.  [L. s.]
> "GEORGE PACE.      [L. s.]"

[Here follows a detailed statement of the facts which it is unnecessary to the report to print.—REP.]

My conclusions, upon a review and consideration of all the evidence, is, that at the time of the sheriff's sale $3,500 was a fair price for a complete title to the premises, free and clear of any charges in favor of the widow or of the weak-minded son, and that at a forced sale they could not have been expected to produce much more than $3,000; that at the time of the signing of the Allen agreement the promissory notes held by the defendant individually, and by him and his partner, Naughright, against the complainant and his father, or either of them, were delivered up to the complainant intentionally, and nothing taken to show for them, or for the debts of the father, paid by the defendant, except the Allen agreement; that it was the intention and belief of the parties that the effect of the Allen agreement was not to give the complainant the right to redeem, which he would have under an ordinary mortgage, but that he should have such right and that only which the strict letter of the agreement gave him; and that the object of the parties was, that the defendant should become the actual owner of the property, subject to the privilege of repurchase by the complainant.

Turning now to the Allen agreement of July 9th, 1877, above set forth, I find in it no obligation on the part of complainant to do anything except, by the supplement, to deliver to the defendant, by way of rent for the premises, one-third of the corn, oats and buckwheat then growing on it. It is, in substance, an agreement by the defendant to convey to the complainant the

premises within six months at a fixed sum, and nothing more. The consideration of this agreement, as it may be gathered from the recitals, is the joining of the complainant's wife in a deed to the defendant in such manner as to bar her inchoate right of dower.

The judgment itself was satisfied by the last-mentioned deed and the sales upon the judgment, for, by the special clause inserted in the complainant's deed, the defendant, in effect, covenanted to make the judgment out of the property by sale under it, and the object of the deed was declared to be—in addition, of course, to barring the wife's dower—to enable the defendant to control the surplus moneys, if any, arising on the sale, and apply them to the payment of the unsecured claims which he held against the complainant and his father jointly and severally. Such surplus money proved to be just sufficient for that purpose, for complainant bid for the premises $2,701, over and above the taxes, which amounted to $200, and his total claims against father and son, including the mortgage and not including the taxes, was $2,681.60. The Allen contract, in effect, says this : I held a judgment against you and your late father, and an execution and levy upon land of which your father died seized and which he devised to you. You and his estate owed me other moneys. You gave me a deed, with your wife joining to bar her dower, so that I could secure the surplus money, and I having sold the property under execution, and bought it for enough to pay my claims and extinguish all indebtedness, I will now give you six months in which to redeem the property, upon terms of paying me back the amount so bid, with $250 for my services. If you fail, the property to be absolutely mine ; you to retain the possession of it for the six months, rendering me one-third of the crops as rent.

Now, this writing I construe to be a contract for repurchase simply, and not a defeasance, notwithstanding the use of the word "redeem." That the mere use of the word "redeem" is not sufficient to make a contract for reconveyance a defeasance, is well settled. *Robinson* v. *Cropsey, 2 Edw. Ch. 138* (at *p. 146*) ; *S. C. on appeal, 6 Paige 480.* The word "redeem" means "repur-

·chase." The words are synonymous, and the first has come into use with lawyers to describe the right of a mortgagor of lands, by reason of the old practice which prevailed in England of making absolute conveyances of lands, by way of mortgage, with a covenant to reconvey upon the payment of the debt, an actual reconveyance being made. The form of conveyance by way of mortgage, now and for many years past in use in this country and state, dispenses with the necessity of a reconveyance; but the phrase "equity of redemption" is still in use to describe the mortgagor's right. The distinction between a contract for repurchase and a defeasance is shadowy and difficult to define, and in fact they cannot be distinguished without taking into consideration all the facts and circumstances surrounding the transaction. This seems to be admitted by all the authorities. Careful examination of the text-writers, and of a great many decided cases in England and in this country, leads me to the conclusion that there are three leading criteria—first, was there a debt created, either at the date of the deed or existing prior thereto, from the grantor, or some other person, to the grantee, which was not paid and satisfied by the conveyance, but which survived and continued in existence, notwithstanding the grant, so that the grantee might have sued upon it? second, was the price named and paid considerably less than the value of the thing granted? The first of these criteria—the continuance of the debt—has always been looked upon as a strong circumstance, and as being almost, if not absolutely, controlling. Conspicuously is this the case in instances of an attempt to turn absolute conveyances into mortgages wholly by parol. With regard to the second criterion—the difference in value—that has been applied freely in cases of absolute assignments of moneyed securities, bonds, mortgages and the like, whose value was easily ascertainable with approximate certainty, and where the assignment has been for a consideration much less than the intrinsic and absolute value of the security assigned. Here the difference in value has also been held well nigh conclusive, for it is not to be believed that a person would assign a moneyed security, of the present value say of $1,000, for a consideration of $500, except by way of mortgage, retaining an

absolute equity of redemption. A third criterion is found in the conduct of the parties with regard to the possession and use of the subject of the grant after the date of the grant. Does the grantor retain possession with the right to use it as if he was the owner? Does he pay for the use of it an amount just equal to the interest on the consideration named, and the like?

The following authorities illustrate the value of the criterion of debt or no debt: *Goodman* v. *Grierson, 2 Ball & B. 274; Conway's Exrs.* v. *Alexander, 7 Cranch 218; Robinson* v. *Cropsey, 2 Edw. Ch. 138; S. C., 6 Paige 480; Glover* v. *Payn, 19 Wend. 518; Holmes* v. *Grant, 8 Paige 243; Brown* v. *Dewey, 1 Sandf. Ch. 56; Flagg* v. *Mann, 14 Pick. 478; Williams* v. *Owen, 5 Myl. & C. 303; Slutz & Larue* v. *Desenberg, 28 Ohio St. 371.*

In *Hogan* v. *Jaques, 4 C. E. Gr. 123,* Chancellor Zabriskie (at *p. 128*), after stating that the line of distinction between a defeasance and a contract to reconvey is very shadowy and indistinct, proceeds as follows : " We find it laid down that an agreement, to be sufficient to convert an absolute deed into a mortgage, should be mutual, that is, that the grantor should be bound to pay the debt, and the grantee to reconvey on payment. It is not, perhaps, necessary in all cases to convert an absolute deed into a mortgage, that the liability of the grantor to pay the debt should remain ; and yet a continuing debt seems so much a part of our idea of a mortgage, that the proof that an absolute deed was intended as a mortgage must be very plain where the debt does not remain, or is considered as paid by giving the deed."

Again, in *DeCamp* v. *Crane, 4 C. E. Gr. 166* (at *p. 171*), he says: " I admit the force of the position so ably urged by the counsel for the defendants, that, when the question is whether the transaction constitutes a mortgage, or is a sale with an agreement to reconvey, the fact whether there is a continued debt or liability of the mortgagor is very important. It is difficult to conceive of a mortgage, which, in its very essence, is a pledge as security for a debt, without some one being liable for the debt. But I am not willing to say that there can be no mortgage without a debt or some one being bound, at all events, to pay the money. A mortgage may be expressly made in that manner."

Again, in *Philips* v. *Hulsizer*, *5 C. E. Gr. 308* (at *p. 314*), he says : " The fact that there is no continuing debt is a strong circumstance, where there is any doubt, to show that a transaction is a contract for repurchase, and not a mortgage.   This was clearly and strongly stated, in the opinion of this court, in *Hogan* v. *Jaques, 4 C. E. Gr. 128; DeCamp* v. *Crane, 4 C. E. Gr. 171.*" To the same effect is the language of Lord Manners, in *Goodman* v. *Grierson;* of Lord Cottenham, in *Williams* v. *Owen ;* of Chief-Justice Marshall, so often quoted, in *Conway* v. *Alexander*, and of Chief-Justice Bronson, in *Glover* v. *Payn.*

The recent case of *Cake* v. *Shull, 18 Stew. Eq. 208*, is in language and decision to the same effect.

The counsel for complainant felt the force of this consideration, and insisted that, notwithstanding the absence of any written obligation, on complainant's part, to pay, the legal liability still remained, arising, according to their view, out of the facts of the case.   But I cannot adopt this view, and think the writing signed by the parties negatives it, and, in connection with the actual surrender of the securities, would have defeated an action at law by defendant against complainant.   They further rely upon certain expressions in the answer, which speak of the debt as still in existence as a debt from complainant after the date of the contract to reconvey.   I have carefully examined the answer in view of this criticism, and do not think the expressions referred to should or can properly be used for the purpose claimed.   It is not necessary to rehearse them.   The context shows they were not used to describe the relations between the parties in this behalf.

So with the agreement prepared by Mr. Hoffman, while acting as counsel for complainant, July 31st, 1878.   He came to defendant with complainant, claiming, on behalf of the latter, that defendant owed complainant money.   Such indebtedness could only arise out of the surplus moneys in defendant's hands arising from the sale and purchase of the farm.   The demand for surplus money was an affirmation of the absolute character of the sale.   The new agreement of redemption was prepared by Mr. Hoffman at his own suggestion to make a written record of com-

plainant's approval of the accuracy of defendant's statements. Defendant was without counsel, and ought not, under the circumstances, to be held responsible for the language of that paper. No doubt he expressed himself as willing to extend the time of redemption, and Hoffman took him at his word, and inserted the claim for that purpose. It is well settled that the character of the transaction must be determined by the condition of affairs at the date of its consummation, and any subsequent agreement to redeem cannot affect the question. I do not think the Hoffman agreement can be used to make against the defendant on the question of mortgage or no mortgage, especially in view of the fact that all the charges and credits made on defendant's book after July 9th, 1877, on account of the farm, are made as charges against and credits to "the Michael Pace farm," and not to and against the complainant. My conclusion is, that the debt which defendant held against complainant was extinguished July 9th, 1877. I have already expressed my opinion as to the value of the farm. I find it was worth very little more than the price fixed for redemption. Turning to the conduct of the parties in the matter of possession and rent, we find the property rented to complainant, not upon the basis of interest on the sum fixed for redemption, but of a share of the produce. Thus all the indications point to a conditional sale, and not a mortgage, and such is my conclusion.

But if there was any doubt on this part of the case, or if my conclusion was different on it, the subsequent conduct of the complainant would, in my judgment, debar him from now coming to this court for aid to enforce his right.

From the date of the agreement of July 9th, 1877, and until her death, in November, 1881, complainant received from the defendant compensation for the support of his mother. From July 9th, 1877, to April 1st, 1879, the form of it was the use of the premises at a reduced rental, and afterwards in actual cash. This compensation was made by the defendant because, and only because, he was the beneficial owner of the land of which the woman's husband died seized. It was so received by the complainant. If he was the beneficial owner of the farm, it was his

'duty to support her. Every time he called on defendant and received from him payment on that account, he said, in effect, you, and not I, are the owner of the farm. This conduct operates not only by way of estoppel, but as a strong indication of what his understanding was as to the nature of the original transaction.

Then, with regard to the improvements put on the premises by the defendant, complainant does not deny that he knew of them as they were being made. He lived in the neighborhood, and had every opportunity to do so, yet he did not open his lips, but stood by in silence, and permitted a mere mortgagee to spend thousands of dollars in improvements on the farm, and now seeks to redeem without paying for them. For, at the hearing, the position was boldly advanced by complainant's counsel, that defendant could not be allowed for money spent in new buildings and extraordinary repairs, while it seemed to be assumed and appeared, clearly enough, that the present value of the farm would not more than cover, even if it would reach, its actual cost to defendant. To say nothing of the inequitable nature of the claim as to improvements advanced by complainant, it seems to me that by his laches in standing by in silence all these years while the defendant was spending his money on the farm, as well as by his conduct in receiving payment for his mother's support, he has disentitled himself to the aid of the court.

On both grounds I think complainant fails, and his bill must be dismissed, with costs.