41 N.J. Super. 151 (1956)
124 A.2d 345
FIRST NATIONAL BANK & TRUST COMPANY, WOODBURY, NEW JERSEY, A NATIONAL BANKING CORPORATION, PLAINTIFF,
v.
JAMES B. MacGARVIE, THE ATCO NATIONAL BANK, A NATIONAL BANKING CORPORATION, EDWARD ROBBINS, SR., THE STATE OF NEW JERSEY, AND THE UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 7, 1956.
*152 Mr. Norman Heine, attorney for the Atco National Bank.
Mr. Charles N. Nugent (Mr. John J. McCarthy, appearing), attorney for the United States of America.
GOLDMANN, J.S.C. (orally).
This matter comes before the court on the motion of the United States of America for a determination that it has properly exercised its right of redemption from the mortgage foreclosure sale previously held in this matter, and therefore is entitled to the ownership and possession of the premises described in the foreclosed *153 mortgage. It also asks for an order that the Atco National Bank execute a conveyance for said premises to it. The bank resists the motion on the ground the Government failed properly to exercise its right of redemption in that it submitted insufficient tender, and asks the court to enter an order determining that the Government's rights in the matter have expired.
The facts are much as Mr. Heine stated them to be. Back in October 1954 the First National Bank and Trust Company of Woodbury instituted an action to foreclose a first mortgage which had been given to it by the defendant MacGarvie, to secure the sum of almost $30,000, with interest at 5% annually, covering lands in Camden County. Nothing had ever been paid on the principal, and there was interest due from August 1953, in addition to certain taxes which MacGarvie had failed to pay. Named as defendants in the foreclosure action were a judgment creditor, Robbins, with a lien of $1,412; then subsequent to him the United States of America, which had a federal tax lien against MacGarvie of over $21,000; and the fourth lienor in order, Atco National Bank, which had a mortgage on part of the lands in question for $7,000, subsequently reduced to judgment.
The United States was properly served in accordance with 28 U.S.C.A., paragraph 2410. Neither the Federal Government nor Atco National Bank requested judgment fixing the amount due on their respective liens. Judgment was therefore entered in favor of the First National Bank and Trust Company of Woodbury in the sum of $32,306.05, with interest from February 7, 1955, and also costs and interest thereon. The judgment stated there was due to Robbins $1,333.70, with interest and costs.
What happened then was that in March 1955 Atco National Bank paid to First National Bank and Trust Company of Woodbury the sum of $33,740.68 in consideration of the assignment to it of the mortgage held by First National, and in further consideration of an assignment to it of all the bank's right, title and interest in the foreclosure action, including the right of Atco to continue the prosecution of *154 the action in the name of First National. This assignment was filed with the Superior Court Clerk, the foreclosure action was continued, execution issued on the judgment directed to the Camden County Sheriff, and on April 22, 1955, following proper advertisement, he cried the sale to satisfy the liens of plaintiff and of Robbins.
The sale was made and Atco National Bank purchased in the name of its assignor, the First National Bank and Trust Company of Woodbury, for $100, the one and only bid of the sale.
On April 25, 1955 First National assigned its bid to Atco, and on May 12 following the sheriff delivered his deed to Atco. The deed was recorded and Atco went into possession. Since then it has paid some $1,284 in taxes and insurance to protect the property.
On April 22, 1956, which would be exactly one year after the sheriff's sale, there was due to Atco National Bank under the mortgage  for principal, interest, costs, sheriff's fees, taxes and insurance  a sum which has been given to me as $36,535. Two days before, on April 20, 1956, the Government had tendered to Atco in redemption of the property the sum of $100, the amount bid at the sheriff's sale, and $6 interest for one year, and demanded a conveyance of the land in question. Both Atco and the First National Bank and Trust Company of Woodbury rejected the tender.
The Government now comes into this court under 28 U.S.C.A., paragraph 2410, which, among other things, provides in subsection (c) that:
"* * * Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien * * *."
I might say, in passing, that the Government did not, by way of affirmative relief, ask for the foreclosure of its own lien at any time.
*155 The argument of the Government's attorney runs something like this: that implicit in the statute, as I have quoted it, is the right of the United States to redeem within the year by offering the successful bidder at the sheriff's sale the amount of the foreclosure sale price plus interest, costs and fees. He reads the words "shall have one year from the date of sale within which to redeem" as creating what has been described in the argument as a statutory right of redemption, to be distinguished, says the attorney, from the equitable right of redemption known to our former Court of Chancery and to this court. Then, having extended the meaning of the statute to include a statutory right of redemption, the argument proceeds to equate this so-called statutory right with similar rights set up in the legislation of several states in the West and Southwest which have been cited to us in the Government's brief.
We have, of course, no statutory right of redemption similar to the ones cited by the Government. We are a common-law State, and we have proceeded in these mortgage redemption matters in a manner which has been familiar to the Bench and Bar of this State for well over a century.
I think one other thing should be mentioned before I go on, and that is, part of the history of this federal statute which the Government attorney has been good enough to call to the court's attention. 28 U.S.C.A., paragraph 2410, originated with a bill entitled H.R. 980, 71st Congress, 3rd session, which became the Act of March 4, 1931, chapter 515, also known as 46 Stat. 1528, section 4, containing the provision I have read. The Government attorney has quoted to us from 74 Congressional Record, Part 6, page 6296, a statement made by the House members of a Joint Committee which issued a report on H.R. 980. H.R. 980, in its earlier draft, provided for the joinder of the United States as a party defendant in a foreclosure action if the foreclosure sale were delayed for a period of one year after suit commenced. However, this provision did not appear in H.R. 980 in its final form reported out of the Joint Committee of the *156 Congress, and in explaining this omitted provision it was said by the House members of the Committee that:
"The Senate amendment contains a clause allowing the Court to stay proceedings on sale until the expiration of the next session of Congress. This was no doubt intended to allow Congress to appropriate money to enable The United States, if a junior lienholder, to bid enough at the sale to take care of prior liens and thus protect its own. In place of that the substitute bill provides that if a junior lienholder, The United States shall have a year in which to redeem. That does away with any necessity for a delay of sale. In many States of the Union there are now laws allowing junior lienholders as well as fee owners a year in which to redeem from execution and foreclosure sale of real estate. It is true that in other states no such equity of redemption exists. However, the provision adds nothing to the present difficulties in states which allow no redemption period, as under present conditions where present lienholders can not sue The United States, the rights of The United States never are barred by foreclosure decree."
It seems to me that if the Joint Committee recognized anything when it used the language I have just read, it was that the United States has the duty and obligation to take care of prior liens in a foreclosure sale like this. The original provision was for a delay of one year so that Congress might provide money to this purpose, and the Joint Committee omitted the provision and substituted in place thereof the language that if the United States found itself in a position of junior lienholder, it would be enough if it had a year to redeem. The equitable thought of the Government having to pay what anybody else would pay, namely, the prior liens, is explicit and implicit in the language which I read, and I don't think it can be wiped out by the very ingenious argument made here that we are to take the language of 28 U.S.C.A., paragraph 2410, which I have twice referred to, and enlarge the word "redeem" to mean this statutory right of redemption which appears in certain western statutes. I don't think Congress meant any such inequitable and unconscionable thing as to allow the Government, at any time up to a year after the sale, to come in, offer what was paid at the foreclosure sale, and immediately assume the position of senior lienholder, pushing every one else into the background *157 and thus, by wiping out the foreclosure bid, gain an advantage which it could never get at the foreclosure sale, or before it, by redeeming without paying the amount of the mortgage, the interest, the fees, and everything else that might be due to the senior lienor.
Redemption in our State has always meant repurchase, which means buying back, receiving back by paying off the existing obligation. There are several cases that so hold. Some of them are cited in plaintiff's brief. I will cite one, Pace v. Bartles, 47 N.J. Eq. 170, 174 (Ch. 1890). Our courts have recognized for a long time that the person who redeems, that is, the person who repurchases, must pay the full amount due to the foreclosing mortgagee. One of the earliest cases was Large v. Van Doren, 14 N.J. Eq. 208, in our Chancery Court of 1862. There are also Atwood v. Carmer, 75 N.J. Eq. 319 (Ch. 1909), and a relatively recent case, Ghee v. Davenport, 2 N.J. Super. 532 (Ch. Div. 1949), modified, in part, in 4 N.J. Super. 518, by the Appellate Division in 1949.
We are in a court of equity, gentlemen, and he who comes into equity must be the first to be ready to do equity. This applies to sovereigns as well as to private persons, if not in greater degree. I don't think that we can, as I said in the course of oral argument, turn the world topsy-turvy, and allow the Government to bide its time and then buy cheaply a senior lien position which it could never achieve in any other way except by paying the foreclosing mortgagee the full amount due him.
I think the Government here is foreclosed. I don't think it has any standing at this late date to do anything but to offer the Atco National Bank, as assignee of the First National Bank and Trust Company of Woodbury, every penny that is due it, and unless it is ready to do that  and I think the time is too late  the Government cannot redeem. That will be the order.
Gentlemen, you may prepare and submit an appropriate form of judgment.