54 N.J. Super. 102 (1959)
148 A.2d 223
PURITAN DAIRY PRODUCTS COMPANY, ETC., PLAINTIFF,
v.
ALFRED CHRISTOFFERS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 30, 1959.
*103 Messrs. Wilentz, Goldman, Spitzer & Sills (Mr. Elias A. Kanter, appearing), attorneys for plaintiff.
Messrs. Simandl and Leff (Mr. Robert H. Simandl, appearing), attorneys for defendants.
SCHERER, J.S.C.
The complaint in this case was filed August 12, 1957 to foreclose a mortgage given by defendants Alfred and Priscilla Christoffers to the plaintiff. The suit *104 proceeded as an uncontested foreclosure and final judgment was entered March 28, 1958. The property was sold at public sale by the Sheriff of Union County on June 11, 1958, and was bid in by one Helen Christoffers for $6,710. After the property was struck off to her the bidder had a title examination made and found that after the filing of the lis pendens in the cause three federal liens had been filed by the Internal Revenue Service against the defendant Alfred Christoffers. The filing dates were September 24, 1957 and July 29, 1958. The premises were owned by Alfred and Priscilla Christoffers as tenants by the entirety.
Helen Christoffers now moves for an order relieving her of her bid and directing the return of her deposit on the ground that there are liens and encumbrances of record against the property, i.e., the federal tax liens, "which liens and encumbrances were not inserted in the notices and advertisements required by law and in the conditions of sale," nor disclosed at the time of sale.
The plaintiff, by a countermotion, seeks the entry of an order adjudicating that Helen Christoffers has defaulted in the terms of purchase and directing that an alias writ of execution be issued so that the property can be resold  the costs of sale to be charged against the bidder's deposit  and that the balance of the deposit, if any, be paid over to the plaintiff, if upon resale the amount realized shall not be sufficient to pay the amount due the plaintiff upon its judgment.
The motion of the bidder will be dealt with first, since, if that motion is decided in her favor, the plaintiff's motion must be denied.
The gist of the argument of the bidder is that the liens of the Federal Government established by the filing of the three notices in 1957 and 1958 were not barred or cut off by the foreclosure judgment in this case. No question is raised about the regularity of the foreclosure proceedings, and they appear to have been conducted completely in accordance with our rules and statutes. No issue is raised concerning the timely and proper filing of the lis pendens *105 under N.J.S. 2A:15-6 et seq. It is the effect of this statute on the federal liens which is questioned.
The bidder relies principally upon the decision in Sherwood v. United States, 5 F.2d 991 (D.C.E.D.N.Y. 1925), where the District Court held that the lien of the United States was not extinguished by the foreclosure of a mortgage in the state court. The lien of the United States was filed after the filing of the lis pendens in the state court action but before the sale. The court held that under the decision in United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893), the government lien was not extinguished.
There are several significant differences between the Sherwood case and the present one. In the first place, neither the provisions of the New York lis pendens act nor its effect on subsequent liens was discussed by the court, so that it is not clear whether that statute gave the same protection to the mortgagee in foreclosure actions as does the New Jersey statute. Next, the mortgagees in Sherwood conceded that the liens of the Federal Government constituted a cloud on their title. The plaintiff here takes exactly the opposite position. Further, the present federal statute, 28 U.S.C.A., sec. 2410, permitting the joining of the Federal Government as a party defendant to a mortgage foreclosure proceeding in the state court, was not then in effect. It was admitted by the Government in the Sherwood case that the lien of the mortgage was prior to the Government's tax liens and that taxes and other advances made by the mortgagees to protect the property were also prior to the tax liens.
The court in Sherwood based its decision upon the conclusions reached in United States v. Snyder, supra. Examination of the opinion in that case reveals that it does not stand for the rule of law for which it was cited in Sherwood. The question in the Snyder case was whether the failure of the United States to file its tax lien in the mortgage office of the Parish of New Orleans, as required by the Louisiana statute, deprived it of priority as against *106 a subsequent bona fide purchaser of property who had no notice of the lien. The federal statute at that time did not require the filing of the lien, but provided that the failure to pay any tax after demand made the tax a lien on all of the taxpayer's property and the Commissioner of Internal Revenue could enforce the lien by suit in the federal court and by sale. See 26 U.S.C.A. (I.R.C. 1954) sec. 6321. Payment of the tax had been demanded in 1879; the property had been sold by the taxpayer in 1881; and the suit to collect the tax by a sale of the property was instituted in 1885. The defense was that the failure of the Government to file its lien, as required by the Louisiana statute, made it unenforceable as against an innocent purchaser for value without notice. The court held that the sole question involved was whether or not the tax system of the United States was subject to the recording laws of any state, and decided that it was not and that the tax lien had priority. That decision, made in 1893, was before the enactment of 26 U.S.C.A., sec 6323, and its predecessors, which requires the filing of the Government's tax lien in order to give it priority over mortgagees, pledgees, purchasers or judgment creditors. The Snyder case stands only for the proposition that state statutes cannot interfere with the assessment of federal taxes or set up limitations of time within which they must be collected.
It is not sought in this foreclosure suit to extinguish the federal lien, nor to prevent its collection, but only to discharge it from the mortgaged property. 28 U.S.C.A., sec. 2410(c).
Neither the research of counsel nor of the court has revealed any federal case, other than Sherwood, supra, in which the question of whether the federal tax lien is discharged by a state court foreclosure, when the lien is recorded after a lis pendens has been filed, has been decided.
26 U.S.C.A., sec. 6323, provides that the lien of the United States, imposed by section 6321 of the same title, shall not be valid as against any mortgagee, etc., until the lien is properly filed. Admittedly, the liens in this case *107 were filed after the recording of the mortgage, the institution of suit and the filing of the lis pendens. There is no question as to the priority of the mortgage. The lis pendens was filed immediately after the complaint.
The Lis Pendens Act, N.J.S. 2A:15-7, provides that after the filing of a lis pendens any person claiming a lien upon the real estate shall be bound by any judgment entered in the suit in which the lis pendens was filed, as though such lien holder had been made a party to the suit and served with process. The bidder, while admitting the effect of the statute on ordinary liens, claims that such a statute is not binding upon the United States. But, aside from the Sherwood case, supra, no authority is cited for that position. As shown above, the Sherwood case cannot be considered authority for that proposition.
And, the more recent decisions in the federal courts are to the contrary. For example, in United States v. Boyd, 246 F.2d 477 (5 Cir. 1957), certiorari denied 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957), the court held that where a sale under a power of sale contained in a mortgage has been completed after the recording of a government tax lien, but before the Government institutes a foreclosure thereof under 26 U.S.C.A., sec. 7403, there is an extinguishment of the tax lien. The court went on to say, 246 F.2d at page 484, that "to say that it thereafter continues in any form (apart from particular statutory rights, if any, of redemption after sale) would be to destroy the absolute priority which Section 6323 was so plainly intended to provide" to the mortgagee. The court observed that to hold otherwise would be to render it unsafe to buy at a foreclosure sale, to bring about confusion in the foreclosure proceedings in the several states, and to disturb the flow of credit by interfering with well-known business procedures. It concluded that Congress could not have meant to do that by enacting 26 U.S.C.A., sec. 7403. As it pointed out, if every such sale was vulnerable, no one could safely buy at a mortgage sale until there had been an exhaustion of the proceedings contemplated by section 7403. This would *108 result in completely clogging the dockets of both the state and federal courts.
To the same effect is United States v. American Nat. Bank of Jacksonville, 255 F.2d 504 (5 Cir. 1958), certiorari denied 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72, October 13, 1958. In that case, also, the court upheld the validity of a mortgage foreclosure over the lien claim filed by the Government. This case also holds that the lien of the Government does not attach to the estate of the husband, where the husband and wife own the real estate as tenants by the entirety, because the lien can only attach to the husband's separate interest and he will have none unless he survives his wife. United States v. Hutcherson, 188 F.2d 326 (8 Cir. 1951).
In the Boyd case, supra, there was a non-judicial sale. In the American National Bank case, supra, there was a judicial sale. The type of foreclosure action, therefore, is not important.
The problem here to be decided is whether the foreclosure proceedings in this case, conducted in accordance with our statute and rules of court, effectively discharge the federal liens so far as this property is concerned. I am of the opinion that it does and that the federal cases are not to the contrary.
For the difficulties which will arise if a mortgagee, in order to protect himself in foreclosing his mortgage by eliminating any question concerning the possible filing of a federal lien between the time of filing his lis pendens and the holding of the sheriff's sale, joins the Federal Government, alleging that it may have some lien upon the mortgaged premises, see 81 N.J.L.J. 120. Such a procedure obviously will only tend to further confuse matters, and it may be doubted whether, if followed, it will have validity, since by the provisions of 28 U.S.C.A., sec. 2410, the United States has waived its immunity to suit only in the type of cases enumerated in that section and not in all kinds of actions. To be properly in court under this section, the Government must have, or claim to have, a mortgage or *109 other lien. Gordon v. Bank of America, 150 F. Supp. 772 (D.C. Cal. 1957); United States v. Cless, 150 F. Supp. 687 (D.C. Pa. 1957). Since at the time this suit was brought the United States did not, as to the mortgaged premises, have or claim "a mortgage or other lien," there is considerable doubt as to whether or not it could properly have been made a party.
It is impossible to conclude that Congress, having given priority to a mortgage by virtue of 26 U.S.C.A., sec. 6323, and permitted the foreclosure of such a mortgage to "discharge" the lien of the United States under 28 U.S.C.A., sec. 2410(c), intended that, where a suit has been started and a lis pendens properly filed under state law, the proceedings in the state court should be rendered ineffective merely because at some time subsequent to the filing of the lis pendens, but prior to the sheriff's sale, a federal lien is filed. Such a finding would result in rendering the judgments of this court in foreclosure actions impotent to discharge any federal lien filed after their entry. To carry this a step further, if the lien were filed after the property has been advertised for sale by the sheriff, the advertising would be ineffective and the plaintiff would lose these not inconsiderable costs because, under the argument advanced by the bidder, plaintiff would be obliged to set aside the judgment, reopen the proceedings to join the United States, and then, after entering an amended judgment, readvertise. No one could ever be sure that foreclosure proceedings were effective until after completion of sheriff's sale, as required by R.R. 4:83-5.
In First Nat. Bank & Trust Co. v. MacGarvie, 22 N.J. 539 (1956), modifying 41 N.J. Super. 151 (Ch. Div. 1956), the court discussed the priority of federal liens as opposed to other liens  a problem with which we are not here confronted, since admittedly the mortgage under foreclosure is prior to the lien of the United States  and said, 22 N.J. at page 544:
"Secondly, it is a fundamental principle of the conflict of laws that legal consequences attaching to a right of redemption and the *110 method of foreclosure are governed by the law of the lex rei sitae. 2 Beale on The Conflict of Laws, secs. 227.1-228.1 (1935). The federal courts have long recognized and given effect to these matters as substantive rules of state property law. Metropolitan Nat. Bank of New York v. Connecticut Mutual Life Ins. Co., 131 U.S. Appendix clxii, 24 L.Ed. 1011 (1878); Parker v. Dacres, 130 U.S. 43, 9 S.Ct. 433, 32 L.Ed. 848 (1889); cf. United States v. Hutcherson, 188 F.2d 326 (8 Cir. 1951). * * *."
Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state, whether it be declared by its legislature in a statute or by its highest court in a decision. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
Section 2410 of 28 U.S.C.A. evinces an intent on the part of Congress that the United States shall be bound by the local law, because it provides in subsection (c) that the judicial sale shall have the same effect to discharge property from a lien of the United States as may be provided with respect to such liens by the local law of the place where the property is situated. As was said in First Nat. Bank & Trust Co. v. MacGarvie, supra, 22 N.J. at page 544:
"* * * the rights of the sovereign are to be determined upon the same plane and with the same equitable attitude accorded claims in competition therewith. * * *."
The lien of the Federal Government does not give it rights beyond those which the taxpayer had in the property sought to be levied upon, and the lien can rise no higher than the rights of the taxpayer. Bankers Title & Abstract Co. v. Ferber Co., 15 N.J. 433, 441 (1954). The rights of the Government are solely dependent upon the rights of the taxpayer, and the recovery against him can only be to the extent of his interest in the property. Zwaska v. Irwin, 52 N.J. Super. 27, 33 (Ch. Div. 1958).
This being so, there is no reason to hold that the lien of the Federal Government should be outside the scope of N.J.S. 2A:15-7, but on the contrary the filing of the *111 lis pendens should as effectively cut off a subsequently filed federal lien as it does any other lien.
The cases of Integrity Trust Co. v. United States, 3 F. Supp. 577 (D.C.N.J. 1933), and Fox v. Queens County Sales Co., Inc., 52 F.2d 794 (D.C.E.D.N.Y. 1931), cited by the bidder, are not in point.
Finally, the bidder argues that under the decision in United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956), the federal lien is not subject to being discharged by the foreclosure action, even though it is subsequent in point of time to the lien of the mortgage and was filed after the institution of the foreclosure proceedings. This case, however, and the cases of United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), do not deal with mortgage liens. The liens there in suit were mechanics' liens, tax liens and liens secured by attachment proceedings. In these cases the liens were held to be inchoate, or not perfected, before being reduced to judgment and, since the federal lien in each case had been filed prior to the entry of judgment, the cited cases hold that the federal liens were not discharged or extinguished by the judgments. Thus, in the case of attachment, the Supreme Court held that this lien was inchoate and it was not until the entry of judgment that the lien became a determined, or choate, lien. The difference between these cases and those involving the foreclosure of mortgages is evident.
Further than this, a mortgage under our law is not merely a "choate lien," to adopt the term used by the United States Supreme Court. Our Supreme Court, in Jaffe v. Zilinski, 14 N.J. 24, at page 29 (1953), quoting from Thompson v. Boyd, 22 N.J.L. 543 (E. & A. 1849), said:
"The mortgagee holding, as against the mortgagor, the legal title, subject only to the condition or equity of redemption, may unite that equitable interest to his legal title, either by foreclosure or by the *112 voluntary release or conveyance of the mortgagor. Such union of the legal and equitable estate extinguishes or, as the phrase is, merges the equitable in the legal estate, and the latter becomes absolute. The estate which was before a fee simple, is still the same, but it is relieved of the condition or equity with which it had been previously encumbered. * * *."
See also, Reilly v. Griffith, 141 N.J. Eq. 154, 169 (Ch. 1947), affirmed 142 N.J. Eq. 724 (E. & A. 1948); Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938).
It, therefore, is apparent that the mortgagee under our law has more than a lien. He has an estate in the lands upon which he holds a mortgage. The reasons which prompted the court to accord priority to the federal liens in the White Bear Brewing Co. and other cases do not exist here.
If, as has been held in a long line of cases, recognition of the rights of the sovereign are to be determined upon the same plane and with the same equitable attitude accorded claims in competition therewith (First Nat. Bank & Trust Co. v. MacGarvie, supra), and if, as stated in the same opinion, the legal consequences attaching to a right of redemption are governed by local law, there is no reason why the lien of the Federal Government should not be just as effectively discharged in a foreclosure suit conducted according to statutes of New Jersey as are other liens, when a lis pendens is properly filed under N.J.S. 2A:15-6. Jaffe v. Zilinski, supra; Finley v. Keene, 136 N.J. Eq. 347 (Ch. 1945).
An order will be entered dismissing the motion of the bidder to be relieved of her bid and granting the motion of the plaintiff to require the bidder to complete her purchase within 60 days of the entry of such order, or, in the alternative, that the property be advertised for resale, with the costs thereof to be deducted from the bidder's deposit now in the hands of the Sheriff of Union County and any loss on resale to be charged against the balance of such deposit then remaining. No costs.