FIRST NATIONAL BANK AND TRUST COMPANY, WOOD-
BURY, NEW JERSEY, A NATIONAL BANKING CORPO-
RATION, PLAINTIFF-RESPONDENT, v. JAMES B. MAC-
GARVIE, THE ATCO NATIONAL BANK, A NATIONAL
BANKING CORPORATION, EDWARD ROBBINS, SR., AND
THE STATE OF NEW JERSEY, DEFENDANTS-RESPOND-
ENTS AND THE UNITED STATES OF AMERICA, DE-
FENDANT-APPELLANT.

Argued October 15, 1956—Decided November 13, 1956.

*Mr. John J. McCarthy,* of the District of Columbia Bar, argued the cause for the defendant-appellant, The United States of America (*Messrs. Herman Scott,* United States Attorney, and *Charles H. Nugent,* Assistant United States Attorney, attorneys; *Messrs. Charles K. Rice, Andrew D. Sharpe, A. F. Prescott, John J. McCarthy,* attorneys, Department of Justice, on the brief).

*Mr. Norman Heine* argued the cause for the plaintiff-respondent, The Atco National Bank, assignee of First National Bank and Trust Company, Woodbury, New Jersey.

The opinion of the court was delivered by

BURLING, J.   The First National Bank and Trust Company, Woodbury, New Jersey, held a first mortgage on property of defendant MacGarvie securing a sum of nearly $30,000.   Default occurred and foreclosure proceedings were initiated by the first mortgagee.   There were other parties who had liens encumbering the property at this time, in the following order of priority:   Robbins, a judgment creditor (approximately $1,400) ; the United States of America by virtue of a federal tax lien (approximately $21,000) ; the Atco National Bank, a second mortgagee (approximately $7,000).

Thereafter and prior to the foreclosure sale Atco National Bank purchased the first mortgage of the First National,

and itself prosecuted the foreclosure. Sale was had and the property bought in by Atco for $100 on April 22, 1955. It received a deed and went into possession and has paid some $1,284 in taxes and insurance to protect the property.

On April 20, 1956 the United States tendered $106 (representing the purchase price at the sale and interest thereon) to Atco and demanded a conveyance of the property. The invitation was declined. A motion was addressed to the Superior Court, Chancery Division, for an order and decree directing that the property be vested in the United States in view of this exercise of its right of redemption. The motion was denied after hearing before Judge Goldmann, 41 *N. J. Super.* 151 (*Ch.* 1956). An appeal was addressed to the Superior Court, Appellate Division, and we have certified the cause prior to a review below.

There is no issue on the joinder of the United States as a defendant in the foreclosure suit. The procedural preliminaries were taken in view of 28 *U. S. C. A., sec.* 2410 (1950). This section constitutes a waiver of sovereign immunity by the United States in any action brought to quiet title or to foreclose a mortgage or other lien on real or personal property on which the United States has or claims a mortgage or other lien. *Gerth v. United States,* 132 *F. Supp.* 894 (*D. C. S. D. Cal.* 1955); *cf. Wells v. Long,* 162 *F. 2d* 842 (9 *Cir.* 1947); *Van Keuren v. United States,* 138 *N. J. Eq.* 66 (*Ch.* 1946) (the latter two cases involved the substantially similar antecedent of *section* 2410 (28 *U. S. C. A., secs.* 901–905 (1940 *ed.*)).

Of significance here is *subsection* (*c*) of *section* 2410:

"(c) A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated. A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. *Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United*

States shall have one year from the date of sale within which to *redeem*. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale of such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head of the department or agency of the United States which has charge of the administration of the laws in respect of which the claim of the United States arises." (Emphasis supplied.)

(The United States did not seek "affirmative relief" in the instant case)

The United States, through its attorneys, contended below and asserts here, that by virtue of the statutory sentence emphasized above it is entitled to redeem the property from the foreclosure sale by paying the purchaser Atco National Bank the price bid and paid at the sale. We are told that redemption refers either to the equitable right before sale or the statutory right after sale; that in the former case the right is exercised by tendering the amount due on the prior encumbrances while in statutory redemption it is only necessary to pay the amount realized at the foreclosure sale; that *section* 2410(c) represents the statutory right as opposed to the equitable right of redemption.

The trial court, although admitting the ingenuity of the argument, concluded that the term "redeem" appearing in the statute could not be so interpreted, for Congress could not be charged with "any such inequitable and unconscionable thing as to allow the Government, at any time up to a year after the sale, to come in, offer what was paid at the foreclosure sale, and immediately assume the position of senior lienholder, pushing everyone else into the background and thus, by wiping out the foreclosure bid, gain an advantage which it could never get at the foreclosure sale, or before it, by redeeming without paying the amount of the mortgage, the interest, the fees, and everything else that might be due to the senior lienor. Redemption in our State has always meant repurchase, which means buying back, receiving back by paying off the existing obligation."

The United States argues that the trial court erred in interpreting "redeem" according to New Jersey law, urging a cardinal rule of construction in the area of federal taxation that statutory terms should be so defined as to receive ·a uniform application. See, *e. g.*, *United States v. Gilbert Associates*, 345 *U. S.* 361, 73 *S. Ct.* 701, 97 *L. Ed.* 1071 (1953). Whether the error in approach is well founded need not detain us. We reach the same result solely upon a study of *section 2410(c)*.

■ Initially it is to be observed that the relative priority of federal tax liens, with other liens, absent statutory authority to the contrary, is governed by the principle " 'first in time, first in right,' " *United States v. City of New Britain, Conn.*, 347 *U. S.* 81, 74 *S. Ct.* 367, 371, 98 *L. Ed.* 520 (1954); *United States v. Sampsell*, 153 *F. 2d* 731 (9 *Cir.* 1946), a recognition that the rights of the sovereign are to be determined upon the same plane and with the same equitable attitude accorded claims in competition therewith. *Cf. Potter v. United States*, 111 *F. Supp.* 585 (*D. C. R. I.* 1953).

■■ Secondly, it is a fundamental principle of the conflict of laws that legal consequences attaching to a right of redemption and the method of foreclosure are governed by the law of the *lex rei sitae*. 2 *Beale on The Conflict of Laws*, secs 227.1–228.1 (1935). The federal courts have long recognized and given effect to these matters as substantive rules of state property law. *Metropolitan Nat. Bank v. Conn. Life Ins. Co.*, 131 *U. S. Appendix* clxii, 24 *L. Ed.* 1011 (1878); *Parker v. Dacres*, 130 *U. S.* 43, 9 *S. Ct.* 433, 32 *L. Ed.* 848 (1889); *cf. United States v. Hutcherson*, 188 *F. 2d* 326 (8 *Cir.* 1951). At the same time, however, statutes concerning federal revenues are to be construed in the light of uniformity, and their provisions "are not to be taken as subject to state control or limitation unless the language or necessary implication· of the section involved makes its application dependent on state law." *United States v. Pelzer*, 312 *U. S.* 399, 402–403, 61 *S. Ct.* 659, 85 *L. Ed.* 913, 916 (1941).

■■ Thirdly, the intricacies of "statutory redemption" may not be overemphasized. As a general proposition there are but two types of redemption—the equitable right, which is barred by the decree and sale, *Union B. & L. Ass'n of Camden v. Childrey,* 97 *N. J. Eq.* 20 (*Ch.* 1924), and the statutory right, which does not arise until the sale takes place. See *Eiceman v. Finch,* 79 *Ind.* 511 (*Sup. Ct.* 1881); *Spurgin v. Adamson,* 62 *Iowa* 661, 18 *N. W.* 293 (*Sup. Ct.* 1884); 3 *Wiltsie on Mortgage Foreclosure* (*5th ed.*), *par.* 1060. No right of redemption exists in New Jersey after sale following the foreclosure of the equity of redemption excepting by virtue of a statute, *N. J. S.* 2*A*:50–4, where the foreclosing creditor obtains a deficiency judgment in an action on the bond which the mortgage secures. The theory of redemption after foreclosure is to drive the sale price at foreclosure to an amount approximating fair value. *Durfee & Doddridge, "Redemption From Foreclosure Sale —The Uniform Mortgage Act,"* 23 *Mich. L. Rev.* 825, 838– 841 (1925). This is one common factor in "statutory redemption," but the internal workings of the system under the various state statutes which incorporate the theory exhibit "manifold variations." *Durfee, Cases on Security, p.* 289 (1951). Professor Durfee goes on to state, *ibid:*

"Without pretending to have examined all the redemption statutes with the minuteness they deserve, I venture the following analysis of their scheme.

All the statutes say more or less upon the following points. (a) The persons who may redeem: though the statutes vary widely in their phraseology, the net result is usually to give this privilege to all who, at the time of the sale, are interested in the equity of redemption. (b) The period within which redemption may be made: often there is one period for one class of persons, another period for another class; sometimes the periods run concurrently (overlapping), sometimes they run serially; the total period varies from three months to two years. (c) The sum that must be paid to redeem: the basic factor is the sale price, to which is added interest at a specified rate and almost invariably some other charges. (d) The effect of the redemption: here we meet questions so vexing that it would be silly to attempt any summation—the whole subject must be left to more leisurely exposition later on."

In the light of these initial observations it is not unreasonable to believe that had Congress intended that which the Executive Branch now seeks it would not have confined itself to a single sentence expression. Lack of decisional authority or administrative interpretation by the Commissioner of Internal Revenue to support the defendant's position would not seem to be without reason.

Section 2410 originated in the 71st Congress as *H. R. 980* and became the Act of March 4, 1931, *c. 515, 46 Stat. 1528.* The Senate version had provided for joinder of the United States as a party defendant in a foreclosure action if the sale were delayed one year after institution of suit. This was deleted by a Joint Committee of both Houses which substituted the sentence now in issue. Referring to the change the Committee stated:

"8. The Senate amendment contains a clause allowing the court to stay proceedings on sale until the expiration of the next session of Congress. This was no doubt intended to allow Congress to appropriate money to enable the United States, if a junior lien holder, to bid enough at the sale to take care of prior liens and thus protect its own. In place of that the substitute bill provides that if a junior lien holder, the United States shall have a year in which to redeem. That does away with any necessity for a delay of sale. In many States of the Union there are now laws allowing junior lien holders as well as fee owners a year in which to redeem from execution and foreclosure sale of real estate. It is true that in other States no such equity of redemption exists. However, the provision adds nothing to the present difficulties in States which allow no redemption period, as under present conditions where present lien holders cannot sue the United States, the rights of the United States never are barred by foreclosure decree." *74th Cong. Record, Part 6, p.* 6208.

It is suggested that the problem was essentially one of appropriation of funds and it would so appear. But the United States goes on to argue that because the original provision calling for postponement of the foreclosure sale was omitted that Congress rejected any equitable right of redemption in the Federal Government, favoring instead a redemption from the sale itself, and the legislative statement is said to indicate that the latter safeguard was modeled on statutes in some 21 states providing for "statutory redemp-

tion." Implicit in this interpretation is that only in those 21 states could the United States be made a party to foreclosure proceedings under *section* 2410(c).

We do not think the statute was intended to be so restricted. The statute applies to quiet title actions and foreclosure proceedings, to lienors both senior and junior to the position of the United States, and both state and federal courts are proper forums. *Subsection* (c) announces at the very outset that "A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United States as may be provided with respect to such matters by the local law of the place where the property is situated." This is not restrictive language. Furthermore, statutes permitting redemption from sale generally recognize a right of redemption in junior lienors, *Durfee & Doddridge, supra,* 23 *Mich. L. Rev.,* at 835–836, hence the creation of such a right under *section* 2410(c) would be superfluous under the restrictive interpretation argued for.

We conclude that the statute neither adopts the intricate machinery of statutory redemption nor does the sovereign's consent depend upon the existence of such machinery under state law. Consent is dependent upon state recognition of the federal right of redemption within one year after the foreclosure sale, but the amount necessary to effectuate the right is governed by the *lex rei sitae.* We recognize the federal right and will give it effect where a sufficient tender is made within the time prescribed by *section* 2410(c). *Cf. Miners Sav. Bank v. United States,* 110 *F. Supp.* 563 (*D. C. M. D. Pa.* 1953).

The trial court by its order has discharged the lien of the United States upon the property involved because the sum tendered in exercise of the right was insufficient. *Cf. Keiler v. Bunn,* 84 *N. J. Eq.* 519 (*Ch.* 1915). The tender was made in good faith and was based upon a construction of 28 *U. S. C. A.,* § 2410(c) which the United States Attorney deemed correct. It would thus seem equitable and proper that the United States be given a period of 30 days

from the issuance of the mandate herein to petition the Superior Court, Chancery Division, to determine the full amount due the first mortgagee or its assignee which is necessary to redeem the premises and to make tender thereof.

In this latter respect the order of the trial court is so modified and as modified, the judgment is affirmed.

No costs will be taxed to any party.

*For modification and affirmance*—Chief Justice VANDER-BILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.