666 A.2d 1018

NEW JERSEY HOUSING AND MORTGAGE FINANCE AGENCY, PLAINTIFF–RESPONDENT, v. BEDMINSTER HILLS HOUSING CORPORATION, DEFENDANT–APPELLANT, AND CHARLES R. HEINE AND DEBORAH S. HEINE, HIS WIFE, THE VILLAGE GREEN AT BEDMINSTER NEIGHBORHOOD CONDOMINIUM ASSOCIATION, INC., THE HILLS VILLAGE MASTER ASSOCIATION, INC., AND GREENWOOD TRUST COMPANY, DEFENDANTS, AND JOHN J. BESOLD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 17, 1995—Decided November 15, 1995.

256

Before Judges BAIME, KESTIN and A.A. RODRÍGUEZ.

*Gregory A. Molyneux* argued the cause for appellant (*Fadem & Molyneux,* attorneys; *Mr. Molyneux,* on the brief).

*Judith C. Arnold* argued the cause for respondent New Jersey Housing and Mortgage Finance (*Richard M. Milstead,* attorney; *Ms. Arnold,* on the brief).

*Thomas P. Fischer* argued the cause for respondent John J. Besold (*Broscious, Israels, Glynn & Gentile*, attorneys; *Mr. Fischer*, of counsel and on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

This case involves the rights and responsibilities of the parties in a mortgage foreclosure proceeding that reached the post-sheriff's sale stage. *R.* 4:65–5. The mortgagors had purchased the property as a below-market-value condominium unit under a court-approved affordable housing plan. The non-profit corporate entity designated by the court to administer the affordable housing plan "in aid of a governmental function" sought eventually to exercise the mortgagors' right of redemption, claiming it by assignment under a power of attorney executed in its favor by the mortgagors at the time of purchase. The trial court denied the corporation's motion to set aside the sheriff's sale and to be permitted to redeem the subject property for the upset price. The corporation appeals. We reverse as to the motion to set aside the sheriff's sale.

The property is a condominium unit subject to both "The Village Green at Bedminster Master Deed" and the "Village Green at Bedminster Neighborhood Condominium Declaration of Covenants, Conditions and Restrictions of Resale" (Declaration). The Village Green at Bedminster Neighborhood Condominium Association (condominium association) was a named defendant but has not participated in the appeal.

In 1984, pursuant to *Southern Burlington County N.A.A.C.P. v. Mount Laurel Tp.*, 92 *N.J.* 158, 456 A.2d 390 (1983) (*Mount Laurel II* ), Judge Serpentelli entered a consent order in a builder's remedy suit in the trial court, *Allan Deane Corp. v. Tp. of Bedminster*. The consent order was based upon a finding that the proposed development of which the subject property was to be a part included 260 lower income housing units and fully complied with the requirements of *Mount Laurel II*. The consent order

provided, *inter alia*, that the developer was to fund the creation of a non-profit corporation, Bedminster Hills Housing Corporation (BHHC), to administer the 260 lower income units and to assist first-time low income homebuyers. The assistance was to include payment of costs related to closing where appropriate.

The consent order approved an agreement of assignment between the developer and BHHC, as well as BHHC's certificate of incorporation and by-laws. Among other clauses pertaining to BHHC's functions, the consent order:

- provided that BHHC was to be established "to administer the income screening, resale controls, and policy considerations affecting the low and moderate income housing";

- declared BHHC to be "necessary to carry out the requirements of *Mount Laurel II* ... performing a service in aid of a governmental function";

- declared resale restrictions on the low and moderate income units, as established in the Declaration, to be "necessary to carry out the purposes of *Mount Laurel II*";

- established BHHC's right of first refusal in any sale of a low or moderate income unit;

- provided that "[t]he recapture mechanism, and any loans made by the BHHC" to purchasers were not secondary mortgages under *N.J.S.A.* 17:11A–34 *et seq.*; and

- declared that State law was not violated by the powers of attorney BHHC was to take back from purchasers, BHHC's right to treat a breach or default of the purchasers' obligations established in the Declaration as an offer to sell the housing unit, or the terms of the Declaration providing that, "in the event of foreclosure, the former owner ... shall receive no more than such owner would have been entitled to receive if the unit would have sold for its maximum resale price at the time of ... foreclosure...."

The consent order also contained other provisions designed to assure that low and moderate income units would be marketed and sold to eligible persons. Additionally, it established that, if the funding provided to BHHC by any developer was "inadequate to cover ... necessary administrative expenses," Bedminster Township would "make reasonable contributions for administrative expenses as shall be necessary to insure the fiscal viability of [BHHC]" as well as other expenditures to assure the successful effectuation of the municipality's affordable housing plan. The

order expressly contemplated that "the New Jersey Housing and Mortgage Finance Agency [ (HMFA) plaintiff herein] has agreed to supply[ ] $9.4 million in mortgage loans to finance the purchase of housing units by low and moderate income buyers." The trial court retained jurisdiction over the affordable housing case.

In July 1985, defendants Charles R. and Deborah S. Heine (the Heines) purchased the subject property for $34,200. Their deed recited the market value of the property as $77,000. The Heines agreed to be bound by the terms of the Declaration, and they executed a power of attorney granting BHHC the authority to take actions on their behalf in pursuit of the terms of the Declaration, including authorization to perform any acts or sign any documents on their behalf in connection with the subject property. To finance the purchase, the Heines executed a $32,490 mortgage which was assigned to HMFA.

In April 1991, the Heines defaulted on their common charges obligation and on their mortgage. The condominium association filed a lien claim in May and HMFA commenced mortgage foreclosure proceedings in November 1991. BHHC and the condominium association were among the named defendants in the foreclosure action. The Heines were served by mail sent to both the subject premises and an address in Florida, but no answer was filed on their behalf.

BHHC filed an answer to the foreclosure complaint in which, except to admit the one allegation of the complaint asserting its status, it averred insufficient knowledge or information to admit or deny the allegations of the complaint. Without pleading an affirmative defense or a counterclaim, BHHC demanded

judgment directing the plaintiff as first purchase money mortgagee not to terminate the resale restrictions imposed by the Village Green at Bedminster Neighborhood Condominium Declaration of Covenants, Conditions and Restrictions of Resale pursuant to Article IX, Section 9.01 of such declaration.

This answer was deemed by the trial court to be non-contesting.[1]

The condominium association filed an answer captioned as "non-contesting", in which it admitted its status as a junior lienholder for unpaid condominium charges and assessments, averred insufficient knowledge or information to admit or deny all other allegations of the complaint, and joined in HMFA's demand for a judgment of foreclosure and payment of the value of its lien from the proceeds of sale.

On December 2, 1993, a default was entered against the Heines and other non-answering defendants; and, because the only answers that had been filed were seen as non-contesting, a final judgment of foreclosure was entered establishing the amount due HMFA as $41,872.28 plus costs, a counsel fee of $568.72, and interest from May 31, 1993. Pursuant to published notice, a sheriff's sale was held on March 8, 1994, with an upset price of $46,383.50. BHHC bid for the property at the sheriff's sale but, after bidding to its authorized limit of $60,000, was outbid. The property was sold to the highest bidder, respondent Besold, for $60,100. The consideration was paid and, after the trial court denied BHHC's motion to set aside the sale, Besold received a sheriff's deed dated April 15, 1994.[2]

BHHC undertook several related courses of action on March 17, 1994. It deposited with the Clerk of Somerset County, an assignment to itself of the Heines' "rights of redemption." This document had been executed by the President of BHHC pursuant to

---

[1] Apparently some negotiations ensued between HMFA and the BHHC. HMFA's attorney represented at oral argument on BHHC's motion to set aside the sheriff's sale, that BHHC's offer to pay only the principal balance on the mortgage in exchange for an assignment of the mortgage was rejected by HMFA as inadequate.

[2] Besold does not dispute BHHC's assertion and the trial court's finding that he is not "income qualified" to purchase the subject property. In a certification filed with us after the appeal was perfected, Besold asserts that the subject property has become his domicile and that he has expended "thousands of dollars and hundreds of hours into making it habitable."

the power of attorney from the Heines. BHHC also submitted a check for $60,101 to the Clerk of the court in exercise of the right of redemption, without prejudice to its right to redeem for the upset figure of $46,383.59. Finally, BHHC filed a motion with the trial court seeking, on several grounds, an order setting aside the sheriff's sale, and permitting BHHC to redeem the property for $46,383.59, as well as a stay of further proceedings regarding the sale of the property.

In an apparent effort to perfect its claim further, BHHC, on March 24, 1994, filed a deed conveying "ownership of" the subject property to BHHC. The deed had been executed the day before by the President of BHHC pursuant to the power of attorney given by the Heines.

After oral argument on the motion, the relief sought by BHHC was denied. In a letter decision dated March 31, 1994, the trial court, after detailing the factual and procedural background of the foreclosure case, observed:

> By being deemed an "affordable housing unit," certain restrictions cloud the resalability of the present mortgaged property. Since the property is an "afforda-ble housing unit," the Village Green Declaration provides that the unit should only be sold to persons who fall within the low to moderate income range. However, Article 9 of the Declaration provides that the resale restrictions terminate if the property is being foreclosed, i.e., foreclosed property does not have to be sold to a low or moderate income individual. Article 9 also provides that the foreclosing lender may choose to not terminate the restrictions, i.e., may choose to keep the property as an "affordable" unit and sell it to a low or moderate income individual.
>
> In this case, the Agency [HMFA] chose to forego maintaining the property as an affordable unit and the foreclosed property was sold to an individual who did not fall within the low to moderate income range.

By way of further background, the trial court also noted:

> BHHC prays for relief because the sale removed the property from the control of BHHC and from the low and moderate income housing pool. In an effort to preserve the number of affordable units at Bedminster, BHHC takes upon [sic] the duty of preventing resale restrictions from terminating by Sheriff's sale due to foreclosure by the first mortgagee. BHHC usually does this by taking an assignment of mortgage from the foreclosing lender and by purchasing the unit at Sheriff's sale. In this case, however, the foreclosing lender was unwilling to give BHHC an assignment of mortgage.
>
> Security Savings and Loan Association, the original lender, assigned the mort-gage to the Agency. The Agency took the position that it would "not assign any

rights to any third party regardless of the reason." However, at one point prior to the sheriff's sale, the Agency indicated that it would agree to a settlement whereby the mortgagors actually refinanced their mortgages with BHHC.

In its letter brief in opposition to BHHC's motion, the Agency maintains that it tried to work with BHHC and waited for long periods of time for BHHC to pay off the outstanding balance and take an assignment. Because BHHC never paid off the outstanding balance, the Agency proceeded to Sheriff's sale. In its initial brief in opposition to BHHC's motion, the Agency suggests that BHHC may redeem the property under an Assignment of Rights of Redemption by paying the Sheriff, not the Clerk of the Court. In contrast, the Agency states in its second brief that they cannot consent to redemption because a third party purchased the property at the foreclosure sale. Indeed, the court agrees with the Agency's latter position. *See Shann v. Jones*, 19 *N.J.Eq.* 251 (Ch. 1868) (purchaser cannot be deprived of the benefit of the sale even with the consent of plaintiff).

Because BHHC could not obtain an assignment of the mortgage from the Agency, BHHC took the position that, by virtue of the power of attorney executed by the Heines, BHHC may exercise any and all rights of redemption which the Heines have to the property. As such, BHHC submits a check for one dollar more than that which was paid by Besold when he purchased the property at the sheriff's sale. However, BHHC specifically states that payment is made without prejudice to its claim that the amount due to plaintiff for redemption is limited to the upset figure of $46,383.59.

The trial court went on to state a pertinent rule of law,

A mortgagor has the right of redemption for the ten-day period provided for making objections to the Sheriff's sale. Since public policy favors the right of redemption, the mortgagor may redeem not only during the ten day period, but also at any time until entry of an order confirming the sale, as long as objections have been filed. [citations omitted].

and to observe:

In this case, objections were timely filed and BHHC is attempting to claim the right of redemption on behalf of the Heines by submitting a $60,101 check at the same time. In exercising the right of redemption, BHHC is acting pursuant to the grant of power contained in the Power of Attorney.

Besold objects to the assignment of the right of redemption and maintains that the same may raise certain ethical questions. Without addressing the suspect nature of the assignment and Deed transferring the property from the Heines to BHHC, this court finds that the Power of Attorney executed by the Heines does not grant BHHC power to redeem the property. The Power of Attorney refers to the purchase or sale of the condominium unit, not a redemption of the mortgage after foreclosure.

Even if the power of attorney did give BHHC the right to redeem on the Heines behalf, this court would not enter a ruling which allows a defendant to actively bid at the Sheriff's sale, and then, when that defendant has been outbid, allows the defendant to turn around and exercise a right of redemption.

The trial court then held, on the authority of *Carteret Sav. and Loan Ass'n v. Davis,* 105 *N.J.* 344, 521 *A.*2d 831 (1987), that the special qualities of the right of redemption require strict construction of the power of attorney granted by the Heines to BHHC because

the Supreme Court of New Jersey noted [in Carteret] that any extension of said right would unlikely benefit the debtor directly. The court found the benefit in extending the right of redemption beyond a voluntary transfer so speculative that the court saw no benefit in doing so. Behind the court's decision was the finding that an extension of the right of redemption beyond the original debtor would only inject further uncertainty into a process already fraught with risk. In this case, the court declines to extend the right of redemption past the original debtor and to prolong the uncertainty surrounding Besold's purchase of the property. (citations omitted).

The trial court also held, based on *Heritage Bank, N.A. v. Magnefax Corp.,* 194 *N.J.Super.* 376, 476 *A.*2d 1271 (Ch.Div.1984), that

assignment of the right of redemption should not be approved by a court, unless the court is fully satisfied that the mortgagor who assigned his right to redeem did so knowledgeably and for fair consideration. In the present case, the original debtors received no consideration for the assignment and indeed may not even know about such assignment.

Having concluded that the exercise of the power of attorney in this matter was ineffective to assign the right of redemption, the trial court denied BHHC's motion for an order establishing its right to redeem the property for the amount of the upset figure.

The trial court also rejected BHHC's motion to set aside the sheriff's sale on various grounds of asserted procedural defect. It held specifically that the Heines had been properly served. BHHC's argument that its answer in the foreclosure proceeding had erroneously been deemed to be an uncontesting answer was likewise rejected. The trial court noted that BHHC had had ample opportunity from the date the judgment of foreclosure was entered on December 2, 1993, until just before the sheriff's sale on March 8, 1994, to raise that issue, and that its unwarranted delay would not be permitted to prejudice the rights of an innocent third party, Besold. The court also declined to afford BHHC the relief it sought as a matter of discretion. Citing 30 *New Jersey Prac-*

tice, *Law of Mortgages,* § 365, at 312–15 (Roger A. Cunningham and Saul Tischler) (1975), including the proposition:

> Where the mortgagee is the purchaser the court will open up the sale more readily than where the mortgaged property is purchased at the public sale by a stranger, and such a sale will be set aside on less evidence of fraud, surprise, accident, or other invalidating circumstances, whatever they may be.
>
> [*Id.* at 314–15 (footnote omitted).]

the trial court held

> Besold points out that BHHC never argues that the sale itself was at all illegal or improper. Absent any kind of a showing of fraud, surprise, accident or irregularities in the sale, this court will not set aside a sale where the mortgaged property was purchased at a public sale by a stranger who outbid the present movant.

Finally, the trial court also denied BHHC's motion for a stay because BHHC had omitted to inform the court when and for what independent reasons it would move for a change of venue and a consolidation of its motion to vacate the judgment of foreclosure with the still open affordable housing action before Judge Serpentelli.

We regard the trial court's disposition of the procedural grounds for the relief sought by BHHC to have been well considered, and its criticism of BHHC's procedural defalcations to have been well taken. We reverse nevertheless because we view the substantive bases for the decision reached to have been erroneous.

■ Determining the primacy between one ownership right claimed as a result of acquiring title at a sheriff's sale and another derived from an assigned right of redemption is, ultimately, a question of policy. *Carteret Sav. and Loan Ass'n, supra,* 105 *N.J.* at 349, 521 *A.*2d 831. The only correct point of departure for considering the issues in this case is the character of the subject property as affordable housing. Its ownership and use has, in fact, been highly regulated in the public interest by the trial court in the affordable housing case pursuant to *Mount Laurel II. See also* the Fair Housing Act, *N.J.S.A.* 52:27D–301 to 329. Indeed, the very existence of the property as housing for low and moderate income purchasers was ordained by constitutional considerations, a wellspring of public interest. *Southern Burlington*

*County N.A.A.C.P. v. Mount Laurel,* 67 *N.J.* 151, 336 *A.2d* 713, *appeal dismissed, cert. denied,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975) (*Mount Laurel I*). This condominium unit is, therefore, in classical terms, property affected with a public interest;[3] and all aspects of its ownership, use and maintenance—and issues arising therefrom—must be viewed through the public interest lens.

In this context, it is remarkable that throughout this proceeding, BHHC, established for one general purpose—to promote the public interest in a single affordable housing plan—could be as insensitive as it was to the threat of losing even one affordable housing unit to market price inclusion. It entered the fray with a defective pleading and, thenceforward, participated in the process in so desultory a fashion as to be faced with the present prospect, betokening a need to engage in extraordinary efforts to achieve a result that BHHC was required to assure from the outset by the most effective and efficient means possible.

It is equally distressing to see the plaintiff, HMFA, an agency of State government, so insensitive to the public policy of this State regarding affordable housing as to place itself in a position of adversity to the BHHC rather than cooperating from the outset to assure that, with the payment of what was due on the mortgage it held and the condominium association's lien, the affordable housing unit would be preserved for the low and moderate income market. The seeming eagerness of HMFA to assert its rights as a mortgagee in default pursuant to section 9.01 of the Declaration by removing the unit from the affordable housing market, rather than exercising its right to "choose ... not to ... terminate the resale restrictions," ill behooves any agency of State government,

---

[3] "[B]usiness or property[,]" *State v. Packard–Bamberger & Co.,* 123 *N.J.L.* 180, 183, 8 *A.2d* 291 (Sup.Ct.1939), "for adequate reason[ ] subject to control for the public good, for the preservation and promotion of the public welfare...." *Lane Distrib., Inc. v. Tilton,* 7 *N.J.* 349, 365, 81 *A.2d* 786 (1951). *Cf. Paris of Wayne, Inc. v. Richard A. Hajjar Agency,* 174 *N.J.Super.* 310, 320-21, 416 *A.2d* 436 (App.Div.), *certif. denied,* 85 *N.J.* 454, 427 *A.2d* 555 (1980).

let alone one generally charged with administering a legislative program designed, *inter alia*, to stimulate the availability of affordable housing, *N.J.S.A.* 55:14K–2e(2), and specifically named in the consent order to do so. It is also notable that the HMFA is a sister agency, in ("but", albeit, "not of", *N.J.S.A.* 55:14K–4i), the same Department of Community Affairs as the Council on Affordable Housing, the agency charged with administering the legislated policies of this State designed to promote the availability of affordable housing, *N.J.S.A.* 52:27D–302, –303, –307. In the same vein, we have been offered no adequate explanation why HMFA has persisted in opposing BHHC efforts to preserve the unit as affordable housing, even after BHHC offered one dollar more than the highest bid to redeem the property. Given its statutory charge in this regard, HMFA is not an ordinary, private sector mortgagee and should not act like one.

■ Respondent Besold entered the bidding at the sheriff's sale in the obvious hope of purchasing the property at a bargain price; and he succeeded, acquiring for $60,100 a unit that had an estimated market value of $77,000 nearly nine years earlier, because the property as affordable housing had been underpriced from the beginning. We note only that Besold was unquestionably on notice, in several different ways—including by Judge Serpentelli's consent order, which was a matter of record—of the character of the property he was bidding on and of the interest of BHHC in the property, as well as the basis of that interest. Besold must be seen to have entered the auction at his own risk. Given the circumstances that prevailed, we discern no special equities in his favor based on his assertion that he occupies the unit as his "domicile" and has expended money to render it suitable for his occupancy. The opportunity for persons of low or moderate income to acquire ownership or occupancy of their homes at affordable prices, was not created to confer windfalls upon non-income-qualified persons in the acquisition of bargain-priced real estate.

■ The policy considerations to which we have alluded help to reveal the error in the various substantive bases upon which the trial court denied BHHC the relief it sought. The trial court's determination "that the power of attorney executed by the Heines does not grant BHHC power to redeem the property[ ]" was erroneous. The reason given for this conclusion bespeaks an all too narrow reading of the document itself. The power of attorney, by its own terms, after referring to the Declaration of Covenants, Conditions and Restrictions as well as BHHC's rules and regulations, establishes itself as irrevocable, contains a broadly worded grant of power entitling BHHC

A. To negotiate, approve, modify, authorize, execute, deliver and accept any agreement of sale, deed, affidavit of title, closing statements or any other instruments required to purchase or sell the Condominium Unit.

B. To perform any other acts and execute any agreements or documents which would otherwise require my consent, action or approval in furtherance of and consistent with the terms and provisions of this Power of Attorney, including but not limited to the payment or disbursement of funds.

and goes on to declare that the power of attorney "shall run with" the property, as well as to recite the controlling character of Judge Serpentelli's consent order in the affordable housing case.

To read such a power of attorney as the trial court did, as merely "refer[ring] to the purchase or sale of the condominium unit, not a redemption of the mortgage after foreclosure[,]" is to give insufficient weight to its connection with the character of the property as an affordable housing unit and BHHC's role as the creature of court order established to oversee and promote the property's dedicated use as affordable housing. To accomplish its mandate, BHHC was designated as the repository of powers of attorney from all purchasers of below-market-value units. This grant of authority, along with the expressly conferred "right ... to treat a breach or default under the Declaration as an offer to sell the condominium unit" and the "right of first refusal in any sale" of a covered unit must be seen as conferring a far greater scope of interest, prerogative and connection upon BHHC than the trial court perceived, whether BHHC was acting independently of the power of attorney or in exercise of it.

The trial court's reluctance to "enter a ruling which allows a defendant to actively bid at the Sheriff's sale, and then, when that defendant has been outbid, allows the defendant to turn around and exercise a right of redemption" was understandable, but likewise mistaken. The respective capacities in which BHHC functioned at the sheriff's sale and thereafter were very different. We see no reason in law why a party who chooses to function as a bidder at a sheriff's sale cannot thereafter act in another capacity, such as successor in interest to or assignee of the mortgagor, or otherwise, especially when the nature of that party's interest is or ought to have been known at the time of the sale. In this connection, we note that the power of attorney was used not only to assign to BHHC the mortgagors' right of redemption on March 16, 1994, but also, in the March 23 deed, to convey to BHHC whatever rights of ownership remained in the Heines. To the extent technisms may be seen to control, there is no good reason not to conclude that BHHC was acting solely on its own behalf at the sheriff's sale and as successor in interest to the mortgagors thereafter.

Citing *Carteret, supra,* 105 *N.J.* 344, 521 *A.*2d 831, the trial court also declined "to extend the right of redemption past the original debtor" because to do so would "prolong the uncertainty surrounding Besold's purchase of the property." To apply the reasoning of *Carteret* without a discriminating analysis of the factual differences between that case and this, is to overlook the Supreme Court's directive therein, to which we have already alluded, that in determining the primacy of competing claims in a mortgage foreclosure situation, "the ultimate question is strictly one of policy." *Id.* at 349, 521 *A.*2d 831. This is because the concept of an equity of redemption evolved as a matter of judicial policy, *id.* at 347–49, 521 *A.*2d 831, and because in *Carteret,* as here, "[t]here is no legal concept that resolves this issue." *Id.* at 349, 521 *A.*2d 831. The "intense judicial scrutiny [that] is warranted[,]" *ibid.* (quoting *Heritage Bank, N.A. v. Magnefax Corp.,* 194 *N.J.Super.* 376, 380, 476 *A.*2d 1271 (Ch.Div.1984)), requires a

close examination of the facts of each case in the light of any considerations of equitable or public policy that may pertain. In *Carteret*, the Court meticulously examined the factual dynamic surrounding the competing claims in order to determine

> whether a junior mortgagee who has acquired the debtor's title at a prior foreclosure sale also acquires the limited ten-day right to redeem property after a foreclosure sale that the original debtor-mortgagor possesses by virtue of this Court's decision in *Hardyston v. Tartamella*, 56 *N.J.* 508, 267 *A.2d* 495 (1970).
>
> [*Carteret, supra*, 105 *N.J.* at 345, 521 *A.2d* 831].

In *Hardyston*, the Court had established the rule that the equity of redemption could be exercised during the ten-day period for objecting to confirmation of the sheriff's sale, *R.* 4:65–5, because

> recognition of the "right of redemption" after sale encourages bidding based on value because the purchaser at the foreclosure sale knows that a bid that does not approximate value will stimulate the debtor to make a last-ditch effort to regain the property at the artificially deflated price. [*Hardyston, supra*,] 56 *N.J.* [at] 513–14 [267 *A.2d* 495], citing *First Nat'l Bank & Trust Co. v. MacGarvie*, 22 *N.J.* 539, 545–47 [126 *A.2d* 880] (1956). While recognizing that the situation would be rare in which a foreclosed mortgagor could successfully redeem after the sale, the *Hardyston* Court reasoned that the historically favored status of the right of redemption in the mortgagor argued for its extension through the ten-day period for objections.
>
> [*Carteret, supra*, 105 *N.J.* at 349, 521 *A.2d* 831].

Beginning its analysis in *Carteret* by noting that "[t]he relevancy of this policy to the situation of the junior mortgagee that has acquired the debtor's title is not immediately clear[,]" *ibid.*, the Supreme Court thoroughly explored the policy implications of any decision, concluding that

> so speculative is the benefit of extending the right of redemption beyond the voluntary transfer sanctioned by *Lobsenz* [*v. Micucci Holdings Inc.*], 127 *N.J.Super.* 50 [316 *A.2d* 59] [ (App.Div.1974) ], that we see no benefit in doing so. In the *Lobsenz* situation we easily recognize the benefit to the owner-debtor of allowing him or her to realize the value of the right of redemption by a transfer of this asset.
>
> [*Carteret, supra*, 105 *N.J.* at 353, 521 *A.2d* 831].

In the light of the public policy considerations that flavor this case, we need proceed no further in our analysis than to emphasize that the Supreme Court, in reaching its conclusion in *Carteret* that the interests of the sheriff's sale purchaser prevailed over

those of the junior mortgagee who had become a subsequent title holder subject to the senior lien, did so because it saw no advantage to any interest of the mortgagor by a contrary holding. In reaching that conclusion, however, the Court specifically recognized the interests of entities or individuals to whom a right of redemption has been assigned. The advantage to the debtor from recognizing the assignment in this case is clear: absent an arrangement involving the grant of a plenary power of attorney pursuant to judicial sanction, the affordable housing unit would not have been available to the debtor at a below-market-value price.

■ This implicates the fourth and final basis articulated by the trial court for denying the relief sought by BHHC. The trial court relied upon *Heritage Bank, supra,* 194 *N.J.Super.* 376, 476 *A.*2d 1271, for the rule that assignment of the right of redemption "should not be approved unless the court is fully satisfied that the mortgagor who assigned his right to redeem did so knowledgeably and for fair consideration." *Id.* at 380–81, 476 *A.*2d 1271. The trial court then held that "the original debtors received no consideration for the assignment and indeed may not even know about such assignment."

■ We need not belabor the objective and subjective values of home ownership to recognize that, when the mortgagors gave a broadly framed power of attorney to BHHC in respect of the property, they received the valuable consideration to which we have already alluded, *i.e.,* the opportunity to purchase real property for a price considerably below market value. The consideration was not in the form of cash payment, but it was ample, more so than the fruit basket that passed in *Heritage Bank.* Furthermore, we are aware of no rule requiring the grantors of a power of attorney such as was given here and in the established circumstances, to be aware of each and every transaction consummated by use of the power. Nothing the Heines did when they defaulted on their mortgage, left the jurisdiction, and permitted a default to be entered against them in the mortgage foreclosure proceeding, can be construed to have restricted the scope of the power of

attorney they granted or to confine the circumstances under which it might be exercised.

■ We conclude, as between BHHC and Besold, that every consideration of relevant policy requires the recognition of the primacy of BHHC's claim to the property. BHHC is the judicially established instrument for the effectuation of a constitutionally based public policy. Besold, on notice throughout of BHHC's interest and involvement, bid on the property at his own risk and must now surrender it.

> [T]o permit a transferee of the owner-mortgagor to exercise the right of redemption would not unfairly deprive the successful bidder at the foreclosure sale (including the mortgagee) of the benefit of his bargain to any greater extent than when the owner-mortgagor himself redeems. The purchaser at the foreclosure sale bids and buys with actual or implied knowledge of the existence of the right to redeem, and with full awareness that his purchase is subject to being defaulted by the timely exercise thereof. *Hardyston Nat'l Bank v. Tartamella, supra.*
>
> [*Lobsenz, supra,* 127 *N.J.Super.* at 55, 316 *A.*2d 59.]

*See also Carteret, supra,* 105 *N.J.* at 350, 521 *A.*2d 831.

■ Because the trial court decided the issues before it against BHHC, it did not reach the question of whether BHHC should be permitted to redeem the property for the upset figure or be required to pay the $60,101 it deposited in the light of Besold's high bid of $60,100. We note that BHHC, by exercising the power of attorney, not only acquired the right of redemption but also, by the March 23, 1994 deed, took all rights the mortgagors retained in respect of the property. Standing, as it does, in the shoes of the mortgagors in every material respect, BHHC should be entitled to redeem the property on the same terms as the mortgagors would, *i.e.,* by paying the full value of HMFA's lien, the condominium association's lien, appropriate interest, costs attendant to the mortgage foreclosure proceeding and the sheriff's sale, and other appropriate charges. *See* Cunningham and Tischler, *supra,* § 366 at 320.

The trial court's order denying BHHC's motion to set aside the sheriff's sale is reversed. The matter is remanded to the trial court for the entry of an order setting aside the sheriff's sale;

canceling the sheriff's deed to Besold; and establishing, with such further proceedings as the trial court may deem necessary, what amounts are due and to whom before legal title may be vested in BHHC.